# In the United States Court of Federal Claims

No. 18-86C

(Filed Under Seal: March 22, 2018)

Reissued: March 29, 2018

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **DZSP 21, LLC,** ) | Post-award bid protest; supplementation |
| ) | of the administrative record; completion |
| **Plaintiff,** ) | of the administrative record; challenges |
| ) | to the agency's evaluation of the |
| **v.** ) | competing offerors' proffered pricing; |
| ) | factors affecting declaratory and |
| **UNITED STATES,** ) | injunctive relief |
| ) | |
| **Defendant** ) | |
| ) | |
| **and** ) | |
| ) | |
| **FLUOR FEDERAL SOLUTIONS,** ) | |
| **LLC,** ) | |
| ) | |
| **Defendant-Intervenor.** ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Anuj Vohra, Crowell & Moring, LLP, Washington, D.C., for plaintiff. With him on the briefs were Jason A. Carey, Nooree Lee, John Sorrenti, and Alexis N. Dyschkant, Covington & Burling, LLP, Washington, D.C.

Veronica N. Onyema, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Robert E. Kirschman, Jr., Director, and Douglas K. Mickle, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C. Of counsel were Richard J. Huber and Patricia J. Battin, Department of the Navy.

Richard B. O'Keeffe, Jr., Wiley Rein, LLP, Washington, D.C., for defendant-intervenor. With him on the briefs were Samatha S. Lee, George E. Petel, and William A. Roberts, III, Wiley Rein, LLP, Washington, D.C.

**OPINION AND ORDER**[1]

---

[1] Because of the protective order entered in this case, this opinion was filed initially under seal. The parties were requested to review this decision and provide proposed redactions of any

LETTOW, Judge.

This post-award bid protest follows a series of proceedings that have persisted for five years, involving four separate protests before the Government Accountability Office ("GAO") and the Navy's corrective action on three separate occasions.  The procurement stems from a solicitation initiated in 2013 for base operations services in Guam.  Plaintiff, DZSP 21, LLC, has been providing such services in Guam since 2005.  It was awarded the contract under the current solicitation three times, but defendant-intervenor, Fluor Federal Solutions, LLC, protested each award before GAO.  On the fourth occasion, Fluor finally prevailed, and, after that award was upheld by GAO, DZSP turned to this court.

In the Navy's initial evaluation of the submitted proposals, the technical ratings of Fluor's and DZSP's proposals were virtually equivalent, but DZSP submitted the less costly proposal.  Accordingly, the Navy awarded DZSP the contract in August 2014.  Fluor protested the award before GAO, which sustained the protest.  The Navy reopened discussions and called for revised proposals.  A reevaluation occurred and, though the gap in cost between the two proposals had closed somewhat, DZSP again prevailed.  Fluor filed another GAO protest.  When GAO informally indicated that it would again sustain, the Navy took further corrective action, this time allowing only limited revisions to a single technical factor.  Despite an ever decreasing cost disparity between the two proposals, DZSP was again awarded the contract.  Fluor filed a third, more limited, GAO protest, and it also was sustained.  The Navy took corrective action for the third time, reevaluating the proposals only as to cost and without revisions.  In carrying out this evaluation, the Navy made upward adjustments to DZSP's cost proposal, with the result that it became more costly than Fluor's.  Fluor was awarded the contract.  DZSP then filed its own GAO protest that was denied in part and dismissed in part, leaving in place the Navy's contract award to Fluor and causing DZSP to bring the instant protest.  Throughout all of these proceedings, DZSP has continued to perform the base operation services under bridge contracts.

DZSP challenges the Navy's evaluation and award and seeks both a declaratory judgment and permanent injunction setting aside the contractual award to Fluor and requiring the Navy to issue a new, updated solicitation.  The government and Fluor have opposed that motion and have filed cross-motions for judgment on the administrative record.

**FACTS**[2]

---

confidential or proprietary information.  The resulting redactions are shown by asterisks enclosed by brackets, *e.g.*, "[***]."

[2]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurement filed pursuant to Rule 52.1(a) of the Rules of the Court of Federal Claims ("RCFC").  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (explaining that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

In October 2013, the Navy issued a solicitation, No. N62742-13-R-1150, for base service operations for the Joint Region Marianas, comprising various military installations in Guam. AR 8a-247, -249;[3] Pl.'s Mot. for Judgment on the Administrative Record ("Pl.'s Mot.") at 3, ECF No. 39. The solicitation offered a cost-plus multi-year contract, consisting of a 12-month base period with the potential for seven additional 12-month option periods. *See* AR 8a-249, 266; Def.'s Mot. for Judgment upon the Administrative Record, Mot. to Strike, and Opp'n to Pl.'s Mot. for Judgment upon the Administrative Record and Mot. to Suppl. the Administrative Record ("Def.'s Cross-Mot.") at 3, ECF No. 42. The solicitation sought to procure "integrated base operations services . . . in carrying out [the Navy's] missions" in Guam. *See* AR 8a-384. Bidders were obliged to demonstrate their ability to provide those services by submitting a proposal that included both technical and price/cost elements. *See* AR 8a-340. Price/cost proposals had to "contain a breakdown of direct labor costs; direct material costs; subcontracting costs; overhead costs; general and administrative costs; and profits." AR 8a-341. Each technical proposal had to be "precise, detailed, and complete as to clearly and fully demonstrate a thorough knowledge and understanding of the [solicitation] requirements[, and a]t a minimum, [provide] . . . sufficient detail so that it may be evaluated in accordance with" the relevant evaluation factors. AR 8a-341.

Proposals were evaluated to determine which provides the "best value" to the government, considering cost and five non-cost factors, designated as factors A through E. *See* Compl. ¶ 40; AR 8a-343. Cost accounted for roughly 50% of the evaluation with the confidence assessment under Factor A accounting for approximately another 25% and with the technical factors, Factors B, C, D, and E, collectively accounting for the remaining 25%. *See* AR 8a-343. For each of the technical factors the Navy assigned an adjectival rating of outstanding, good, acceptable, marginal, or unacceptable and for the Factor A confidence assessment, assigned an adjectival rating of substantial confidence, satisfactory confidence, limited confidence, no confidence, or unknown confidence. *See* AR 8a-353 to 354. "Cost proposals w[ere] not [to] be assigned an adjectival rating[, however,] but [were to] be evaluated for completeness, cost reasonableness, and cost realism." AR 8a-343. Relevant to this bid protest, Factor C evaluated staffing and resources, particularly the bidder's "ability to recruit and retain qualified local workforce and key personnel/managers." AR 8a-348 to -349. Among the proposed qualified workforce were 68 positions for "exempt employees," *i.e.*, employees not covered by collective bargaining or the Service Contract Act, for which the bidders were required to provide exempt labor rates. *See* Def.'s Cross-Mot at 9 & n.2 (citing AR 116-16662); Def.-Intervenor's Cross-Mot. for Judgment on the Administrative Record and Opp'n to [Pl's] Mot. for Judgment on the Administrative Record ("Def.-Intervenor's Cross-Mot.") at 25 & n.11, ECF No. 43; AR 92-13751.

---

[3]Citations to the administrative record refer to the record as filed on January 30, 2018 and corrected with additions on February 26, 2018, as well as some of the documents attached to Pl.'s Mot. for Leave to Suppl. the Administrative Record ("Pl.'s Mot. to Suppl."), ECF No. 38, filed February 9, 2018. The record is divided into tabs and paginated sequentially. In citing to the record, the court will first designate the tab, followed by the page number. For example, AR 8-247 refers to tab 8, page 247 of the administrative record.

DZSP is a corporation based in Guam and began offering base operation services for the military installations in Guam in 2005. Compl. ¶¶ 19, 30. Pursuant to the initial evaluation of submitted proposals, both DZSP and Fluor received an overall technical rating of "outstanding" and a confidence assessment rating of "substantial confidence," AR 8a-5405, but DZSP's proposal was the less costly of the two. *See* AR 8a-5406 (reporting DZSP's price at $532,284,944 and Fluor's at $572,077,165). Due to this difference in price, the Navy determined that DZSP provided the best value to the government, and it was awarded the contract on August 15, 2014. AR 8a-5408, -5422. Fluor filed a protest with GAO claiming, among other things, that the Navy made misleading statements that caused Fluor to unnecessarily increase its proposed price. *See* AR 2-148, -159 to -162. GAO sustained Fluor's protest as to its misleading-statements claim and recommended that the Navy "afford the competitive range offerors meaningful discussions based on its reevaluation of proposals[, and] . . . solicit, obtain, and evaluate revised proposals and make a new . . . selection decision based on that reevaluation." AR 20-6044 to -6045, -6047.

In response to GAO's determination, the Navy reopened discussions and requested revised proposals in July 2015. *See* AR 32-10342 to -10350. When the Navy reevaluated the proposals, both DZSP and Fluor again received "outstanding" overall technical ratings and "substantial confidence" assessment ratings, and once again, DZSP provided the lowest cost proposal, albeit by a decreased margin. AR 58-11135 to -11136 (listing DZSP's cost at $488,336,276 and Fluor's at $495,325,031). DZSP was again awarded the contract, AR 58-11141, and Fluor once again filed a protest with GAO, AR 70-11346 to -11367. In this second protest, Fluor criticized the Navy's cost realism analysis, particularly, and relevant to this action, the Navy's failure to properly analyze DZSP's proposed labor rates for "[e]xempt labor categories" and to appropriately consider the effect of the Guam Gross Receipts Tax. *See* AR 70-11356 to -11357. Instead of pursuing a GAO determination, the parties held an alternative dispute resolution conference where GAO made corrective-action recommendations. Def.'s Cross-Mot. at 9; AR 75-13432. In light of those recommendations, the Navy agreed again to take corrective action "ensur[ing that] a cost adjustment is applied to reflect consistent application of [the] Guam Gross Receipts Tax to all offerors and . . . address[ing] how DZSP's [***] . . . over the life of the contract and the effect if any to cost realism for exempt labor." *See* AR 75-13432.

As part of that corrective action, the Navy reopened discussions with Fluor and DZSP and permitted limited revisions to the proposals. *See* AR 89-13742 to 90-13746. The Navy sought further information about how DZSP would achieve its proposed exempt labor rates. *See* AR 89-13743. DZSP responded to the inquiry by explaining that it would achieve those rates [***]. *See* AR 91-13747 to -13748; *see also* Pl.'s Mot. at 9.

The Navy also inquired into Fluor's claim that if awarded the contract, it would hire 95% of its employees "from the incumbent workforce" at reduced rates, particularly, how Fluor would source its workforce "[s]hould the incumbent workforce not agree to work for [Fluor] at the reduced rates." AR 92-13750. Fluor first explained that of the 68 full-time positions at issue, it arrived at its rates by [***]. AR 92-13751. The reductions Fluor proposed were notable; in July 2016, the Navy evaluators concluded that the proposed salaries were "between [***] less than wh[at] is being paid on the current Guam BOS [base operations services] contract." AR 190-26953. Fluor reiterated its confidence that it could meet its incumbent hiring goal of 95% at

4

those rates. AR 92-13751. As to how it would source its workforce in the scenario where the incumbent workforce refused to work at the lower rates, Fluor explained its "[***]." AR 92-13751 to -13752. [***], Fluor [***]." AR 92-13753. Also pursuant to the corrective action, the Navy determined that Fluor had used 4.167% for a Guam Gross Receipts Tax rate and asked Fluor to recalculate its cost estimates using the prescribed 4% rate; this resulted in a downward adjustment of Fluor's pricing. *See* AR 92-13750; Pl.'s Mot. at 8.

In July 2016, the Navy completed another round of both technical and cost evaluations of the partially revised proposals. *See* AR Tabs 105, -106. Among other determinations, the technical evaluation team stated that DZSP's [***] was "very realistic," while expressing concerns about Fluor's staffing plan because it "proposed salaries between [***] less than what [was] being paid on the current DZSP contract[, which] . . . could cause problems with employee morale and lead to retention issues" where Fluor "intend[ed] to offer employment to DZSP employees." *See* AR 106-13986, -14008. For the third time, the Navy rated both DZSP and Fluor as technically outstanding and evoking "substantial confidence." *See* AR 108-14029. Despite the Navy's concerns that Fluor's staffing plan would not achieve its stated objective, Fluor was assessed a strength for its "goal . . . to hire 95% of the incumbent workforce" because the plan, if successful, would benefit the government by "retain[ing] institutional knowledge and promot[ing] continuity of services." AR 188-26929. The total gap in cost continued to close with DZSP estimating its cost at $491,894,166 and Fluor estimating its costs at $494,519,656, but the Navy once again determined that DZSP provided the best value to the government and awarded it the contract. AR 108-14029, 110-14056.

In October 2016, Fluor filed its third GAO protest, once again challenging the Navy's price realism analysis as well as claiming that the Navy engaged in disparate treatment of Fluor's and DZSP's revised proposals. *See* AR 114-16628, -16636; Def.'s Cross-Mot. at 12. GAO sustained Fluor's protest, agreeing "that the [Navy] evaluated the two proposals disparately in connection with the question of recruitment and retention of staff." AR 116-16660, -16665; *Fluor Fed. Sols., LLC*, B-410486.9 (Comp. Gen.), 2017 CPD ¶ 334, 2017 WL 5563205, at *4. GAO relied on its interpretation of Fluor's statement to the Navy: "Of significance [to GAO], Fluor specifically represented that, in the event it was unable to attract the incumbent staff [***]." AR 116-16666; 2017 WL 5563205, at *5. GAO took exception to the fact that the Navy "criticiz[ed] Fluor's proposed approach as possibly involving a risk that it would not be able to recruit the incumbent workforce, while . . . failing to meaningfully consider whether a similar risk was raised by DZSP's proposed approach." *See* AR 116-16668. Accordingly, GAO "recommend[ed] that the [Navy] reevaluate [the] proposals in a manner that is consistent with [the GAO] decision and make a new . . . [award] decision after performing that reevaluation." AR 116-16668.

After this third protest, the Navy requested no proposal revisions but decided to reevaluate the proposals as they were against the original 2013 solicitation, performing only a cost evaluation. *See* Def.'s Cross-Mot. at 13. The cost evaluation was dated June 30, 2017 and focused exclusively on Factor C, specifically how proposed exempt labor rates affected pricing. *See* AR 192-26971. When evaluating DZSP's workforce [***] for maintaining exempt labor rates, the Navy reversed itself, determining that the approach was "not a reasonable and realistic basis" for DZSP's rate projections. *See* AR 192-26972. In support of this reversal, the cost evaluation states that DZSP's "methodology is not consistent with [DZSP's] technical

proposal/historical data" and DZSP's past performance. AR 192-26972 to -26974. The evaluation looked to changes in DZSP's exempt labor rates under previous and then-current contracts as evidence of DZSP's failure to achieve the [***] in those rates. *See* AR 192-26974. Since first being awarded the contract and throughout the entirety of the extended protest process, DZSP had continued to provide base operation services in Guam by entering into various bridge contracts with the Navy. *See* AR 192-26974 to -26975 (tables in the Navy's evaluation of June 30, 2017, drawing from "Bridge 1" and "Bridge 2").[4] The Navy determined that over the course of those contracts DZSP's exempt labor rate had increased by an average of [***]. AR 192-26974. The Navy acknowledged that the circumstances surrounding the bridge contracts had entailed changes in "employees, job categories, and the quantity of positions proposed,"[5] and that the changes rendered the bridge contracts disanalogous to the contract to be awarded. *Id*.[6] Even so, for DZSP, the Navy applied "a [***] escalation factor to the proposed [e]xempt labor rates each year of contract performance." AR 192-26975. The evaluation adjusted DZSP's estimated cost upward [***]. AR 192-26975.

When evaluating Fluor, the Navy also reversed itself. Instead of expressing concern about Fluor's exempt labor rates, the evaluation essentially adopted GAO's interpretation in 2017 of Fluor's proposal, opining that Fluor's approach was "reasonable and realistic" and "satisfactorily addressed any recruitment and retention concerns because [Fluor] [***]." AR 192-26978. The evaluation concluded that the "[r]isk of [Fluor's] unsuccessful performance [of the contract was] very low." *See* AR 193-27003. Separately, the Navy made upward adjustments to both cost proposals, specifically their exempt labor rates, "to reflect a performance start date of September 1, 2017." *See* AR 192-26971 to -29672. This latter change increased Fluor's total contract cost by $[***]and DZSP's by $[***]. *See* AR 192-26971 to -29672. With these changes to the proposals, Fluor's and DZSP's non-cost ratings remained unchanged, but Fluor now had the less costly proposal: $495,891,094 for Fluor and $[***] for DZSP. AR 193-26986. Fluor was subsequently determined to provide the best value to the government and was awarded the contract. AR 193-27007.

DZSP filed a protest with GAO on October 3, 2017, challenging the Navy's upward adjustment of DZSP's cost proposal and claiming that the Navy "failed to normalize [DZSP's]

---

[4]Bridge 2 was submitted on May 10, 2016 and extended into 2017. AR 192-26974. The Navy's evaluators noted that Bridge 3 had been submitted on June 4, 2017, but because it was then "still being negotiated and potentially revised," it was "not u[sed] in the comparison" that was made on June 30, 2017. *Id*.

[5]In the evaluation made at the end of June 2017, the Navy did not identify specifically the extent to which its needs had increased or the number of operations-service hires that had been added by DZSP to accommodate the increased work.

[6]The cost evaluators noted that "[t]he Guam BOS [base operations services] Bridge contracts are only awarded for six months at a time which may have caused upward pressure on wages due to uncertainty with employment." AR 192-26975. "Nonetheless, in the absence of a formal DZSP written compensation policy/procedures related to annual [e]xempt labor rate increases, Bridge Contract data is a reasonable basis to conclude an established practice of [e]xempt labor rate increase[s]." *Id*.

application of a Guam tax credit, despite having done so in a prior corrective action." AR 119-16854, -16872. On January 10, 2018, GAO denied the protest as to the upward cost adjustment and dismissed as to the Guam tax credit. AR 213-27489, -27496 to -27497, -27500.

DZSP filed the complaint in the instant bid protest on January 17, 2018. DZSP challenges the Navy's evaluation as arbitrary and capricious for failing to consider the risk that would result from Fluor's inability to retain an incumbent workforce and for rejecting the technical evaluation team's conclusion that DZSP's [***] was realistic. Compl. ¶¶ 172-83. DZSP also challenges the award to Fluor on two further grounds: first, DZSP alleges that the Navy's requirements have materially changed since the solicitation was issued in 2013, and second, DZSP contends that the Navy arbitrarily and capriciously failed to evaluate the Guam tax credits on an equal basis. Compl. ¶¶ 184-89. DZSP seeks a declaratory judgment that the award of the contract to Fluor was "arbitrary, capricious, or otherwise an abuse of discretion, and not in accordance with procurement law" and an injunction preventing performance of the contract "pending the issuance of a revised solicitation that adequately reflects the Navy's actual requirements, followed by a new competition and . . . selection decision." Compl. at 40.

Pending before the court is DZSP's motion for judgment on the administrative record, *see generally* Pl.'s Mot., its motion to supplement the administrative record, *see generally* Pl.'s Mot. to Suppl., and the government's and Fluor's cross-motions for judgment on the administrative record. *See generally* Def.'s Cross-Mot.; Def.-Intervenor's Cross-Mot. All issues have been fully briefed and argued and are now ready for disposition.

**STANDARDS FOR DECISION**

Section 706 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, governs the court's consideration of a challenge to an agency's contract award. *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5."). Under the APA, courts may set aside agency decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), subject to the traditional balancing test applicable to a grant of equitable relief, *see PGBA, LLC v. United States*, 389 F.3d 1219, 1224-28 (Fed. Cir. 2004). The court may overturn an agency decision only "if '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). Because "[c]ontracting [o]fficers are entitled to exercise discretion upon a broad range of issues . . . , procurement decisions are subject to a highly deferential rational basis review," *PAI Corp. v. United States*, 614 F.3d 1347, 1351 (Fed. Cir. 2010) (internal citations and quotation marks omitted), "the court must sustain an agency action unless the action does not evince rational reasoning and consideration of relevant factors," *id.* (internal quotation marks and brackets omitted); *see also Innovative Test Asset Sols., LLC v. United States*, 125 Fed. Cl. 201, 215 (2016) (noting that the arbitrary and capricious standard is highly deferential, and the court may not "substitute its judgment for that of the agency" (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)) (internal quotation marks omitted).

**ANALYSIS**

DZSP brings three broad challenges to the Navy's contract award to Fluor.  First, DZSP claims that the Navy has changed its requirements and thus must issue a new, amended solicitation.  *See* Pl.'s Mot. at 15-23.  Second, DZSP asserts that the Navy improperly evaluated Fluor's proposal because it misunderstood Fluor's [***] as it relates to retention of the incumbent workforce.  *See id.* at 23-29.  Third, DZSP claims that the Navy improperly evaluated DZSP's proposal and arbitrarily and capriciously made an upward adjustment to its cost proposal and disparately applied the Guam Gross Receipts Tax.  *See id.* at 30-38.

*A. DZSP's Motion to Supplement and Claim that the Solicitation Must be Amended*

"When . . . the [g]overnment changes its requirements or terms and conditions, the contracting officer shall amend the solicitation."  Federal Acquisition Regulations ("FAR") 48 C.F.R. § 15.206(a).  DZSP argues that although the requirements as stated in the solicitation have remained the same since it was issued in 2013, the circumstances militarily in Guam "have dramatically changed," such that "[t]he only reasonable course of action for the Navy is to begin the procurement anew by revising the terms of the [s]olicitation to reflect its actual, current requirements."  Pl.'s Mot. at 15.  In support of this argument, DZSP relies both on its own "experience serving as the Navy's current Guam base support contractor" and on documentary materials relating to bridge contracts with the Navy, appended to its motion to supplement the administrative record.  *See id.* at 16-20.  These supplementary documents paint a startling picture, noting increases in some service requirements by large percentages.  *See id.* at 17-18.  Although the government acknowledged in June and July 2017 that under the recent bridge contracts there have been "numerous changes [since 2013] in employees, job categories, and the quantity of positions proposed," AR 192-26975, it never gave any indication of the actual numerical increases required, *id*.  In its brief, DZSP also relies on data derived from experience under the bridge contracts, but it extends the time period involved through the end of 2017.  *See* Pl.'s Mot. at 17-18 (representing that some requirements increased over 1,000%).  Because the data cited by DZSP extend beyond the time of the Navy's evaluation, which occurred as of June 30, 2017, the court has disregarded the percentages stated by DZSP for the reasons discussed *infra*, at 9.  Even ignoring the data from the last half of 2017, the increases under the bridge contracts considered by the Navy arguably would amount to "a significant change in the government's requirements," requiring an amendment of the solicitation.  *Consolidated Eng'g Servs., Inc. v. United States*, 64 Fed. Cl. 617, 639-40 (2005).

The government contends that the court should defer to the Department of Defense's "determin[ation of] its own mission requirements."  Def.'s Cross-Mot. at 26-27.  Specifically, it argues that "determining an agency's minimum needs is a matter within the broad discretion of agency officials . . . and is not for the court to second guess."  *Id.* at 27 (quoting *Savantage Fin. Servs., Inc. v. United States*, 595 F.3d 1282, 1286 (Fed. Cir. 2010)) (internal quotation marks and brackets omitted).  The government requests that the court deny DZSP's motion to supplement the record and moves for all citations to the pertinent documentary materials to be stricken because "the Navy did not consider the administration of DZSP's bridge contracts" when making its award determination.  *See* Def.'s Cross-Mot. at 51.

The Navy's latter asseveration is not accurate.  The Navy itself acknowledges that it considered the bridge contracts in determining "whether DZSP's exempt labor rates would remain constant [over] the life of the contract."  Def.'s Cross-Mot. at 51 & n.12.  Despite that

concession, the Navy nonetheless asserts that it did not use the information about experience under the bridge contracts to actually determine the escalation rate it chose to apply. *See id.* (citing AR 192-26974 to -29675); *see also* Hr'g Tr.47:1-5 (March 9, 2018) ("[The Navy] looked at that one narrow facet of the bridge contracts," *i.e.*, "it looked at the bridge contracts within the context of looking at the increases in labor rates that had occurred.").[7] In one respect, the court agrees with the Navy. The salaries paid to exempt employees under the bridge contracts were higher than those DZSP had projected, but the escalation rate chosen by the Navy appears to have no basis in the bridge-contract data the Navy examined.

As noted at oral argument, the court does not accept that the Navy may refer to materials for some purposes but not for others, and arbitrarily limit review in such a fashion. Hr'g Tr. 47:6-8, 48:11-14. In light of the Navy's use of information from the bridge contracts as of the end of June 2017, the court concludes that DZSP's motion to supplement is better understood as a motion to complete the record. As such, the court grants DZSP's motion in part and denies it in part. All supplementary documents that were available to the Navy when it issued its most recent cost evaluation on June 30, 2017 shall be included in the record; all more recent supplementary documents shall be excluded.

Separately, the court will not require the Navy to amend its 2013 solicitation. The military assets based on Guam by the Navy, Marine Corps, and Air Force have very significantly expanded over recent years. Even so, the Navy, not the court, is in the best position to determine its needs, and this court "give[s] great deference to the professional judgment of military authorities concerning the relative importance of . . . particular military interest[s]." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (internal quotation marks and citations omitted). It simply is not the place of the court to substitute its judgment for that of the agency respecting support of defence installations on Guam. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### B. The Navy's Evaluation of Fluor's Proposal

DZSP argues that the Navy's award to Fluor was arbitrary and capricious because the Navy misunderstood Fluor's proposal, assessing a strength when one was not warranted. *See* Pl.'s Mot. at 23. DZSP claims that in June and July 2017, the Navy never grappled with the concerns expressed in the 2016 technical evaluation regarding Fluor's staffing plan, but irrationally reversed itself in July 2017 after the GAO's ruling in early 2017. *See id.* at 24-26. While DZSP acknowledges that Fluor did promise [***], Fluor did not particularly rely on retention of incumbents in that regard, which is the basis on which it was assessed a strength. *See id.* at 25-26. Recognizing that it might not be able to hire sufficient numbers of incumbents with its relatively low pay rates, Fluor had specifically pointed to its "[***]," AR 92-13752, and also to its ability to "[***]," *id*. These alternative sources of hires were important to its ability to staff the required services because Fluor had based its cost proposed on reductions of [***] from the rates being paid by DZSP on the contract in effect in July 2016. *See* AR 190-26953, *see also supra*, at 4. The government argues that there was no such misunderstanding; the concerns in the 2016 evaluation "simply require[d] the [g]overnment to assess the value of the proposal in the

---

[7]The date will be omitted from further citations to the transcript of the hearing held on March 9, 2018.

context of practical realities. This is exactly what the Navy did" in its 2017 cost evaluation. Def.'s Cross-Mot. at 32-33.

The government's arguments are ultimately unavailing for the same reason that the Navy's evaluation is flawed: it adopts GAO's interpretation of Fluor's proposal. GAO restated Fluor's promise and mistakenly determined that the Navy had misevaluated Fluor's proposal. GAO considered Fluor had warranted that "in the event [Fluor] was unable to attract the incumbent staff with the rates of compensation it was proposing, it would not [***]." AR 116-16666 (emphasis added), 2017 WL 5563205, at *5 (partially redacted).[8] The problem is that nowhere in the record does *Fluor* make this promise. Its proposal states that [***]. *See* AR 92-13751 to -13752 (emphasis added). Fluor's posture is not problematic in and of itself, but the Navy and GAO seemed to have lost sight of the context in which Fluor was making its representation. Fluor was assessed a strength by the Navy for its plan to retain incumbent employees because it would benefit the government by "retain[ing] institutional knowledge and promot[ing] continuity of services." AR 188-26929. While it is true that [***], it does nothing to achieve the benefits for which Fluor was assessed a strength. Further, with its mistaken reading of Fluor's proposal, the 2017 cost evaluation concluded that the "[r]isk of [Fluor's] unsuccessful performance [of the contract was] very low," *see* AR 193-27003, apparently not mindful of the reality attendant to the circumstances associated with Fluor's retaining the incumbent workforce. DZSP never contested that Fluor could provide qualified personnel, only that it was not deserving of a strength in retaining incumbents. The court concurs.

The government argues in the alternative that even if the Navy erred in its analysis, DZSP was not prejudiced by this mistake. Def.'s Cross-Mot. at 35. Specifically, the government asserts that if the strength assessed to Fluor were omitted, "Fluor['s proposal] would have an equivalent number of strengths as DZSP's proposal." Def.'s Cross-Mot. at 36. DZSP argues that it was prejudiced because the proposals received the same overall rating and "[t]he difference between the two proposals was razor thin." Pl.'s Reply in Support of Its Mot. for Judgment on the Administrative Record and Resp. to Def.['s] and Def.-Intervenor's Cross-Mots. for Judgment on the Administrative Record ("Pl.'s Reply") at 17, ECF No. 44. On the record, it seems evident to the court that, due to the concerns expressed in the Navy's 2016 evaluation about Fluor's staffing approach, if the Navy were required to reevaluate Fluor's proposal, it would either have to assess Fluor a weakness or at least omit a strength. The Navy would have to account for the distinct possibility that Fluor could not meet its goal of hiring incumbents and would have to rely on securing less experienced exempt employees, with perhaps a need to factor in an hiatus in performance for training. It is *possible* that none of these changes would definitively result in an award for DZSP, but given the relative equality of the two proposals, the court concludes that the likelihood is great enough to constitute prejudice. Further, prejudice cannot be assessed in a vacuum, but must be considered in light of all of the changes the Navy would have to consider upon reevaluation. As the court also determines that the Navy's evaluation of DZSP's proposal was arbitrary and capricious, *see infra*, at 12-13, taking these circumstances together, DZSP is prejudiced. *See PGBA, LLC v. United States*, 60 Fed. Cl. 196,

---

[8]In its 2017 evaluation the Navy adopted GAO's mistaken restatement, commenting that Fluor "satisfactorily addressed any recruitment and retention concerns because [it] proposed [***] in order to achieve its hiring of 95% of its exempt employees from the incumbent work staff and [***]." AR 192-26978.

212-13 (2014) (ruling that a mistake as to one of the "discriminators" in a procurement was prejudicial in context), *aff'd*, 389 F.3d 1219.

Because there is no evidence in the record to support the Navy's understanding of Fluor's proposal and because of the Navy's own unsatisfied, earlier-expressed concerns regarding Fluor's staffing plan, the Navy's evaluation of Fluor's proposal was arbitrary and capricious.

### C. *The Navy's Evaluation of DZSP's Proposal*

DZSP challenges the Navy's evaluation of its proposal, particularly the upward cost adjustment, as arbitrary and capricious. Pl.'s Mot. at 35. DZSP asserts that the Navy "ignored the [2016 evaluator's] conclusions about the realism of DZSP's proposed staffing approach." *Id.* The 2016 technical evaluation concluded that DZSP's [***] was "very realistic," AR 106-13986, but the Navy reversed that conclusion in the 2017 evaluation without a further technical evaluation and without much factual explanation. *See* Pl.'s Mot. at 35; Pl.'s Reply at 21-24. The government counters that the Navy was not bound by its 2016 evaluation and was free to make a new determination. Def.'s Cross-Mot. at 41-44. It claims that the record supports its assertion that the Navy considered the 2016 evaluation when making its 2017 determination and otherwise provided sufficient reasoning to support its decision. *See* Def.'s Reply in Support of its Mot. for Judgment upon the Administrative Record ("Def.'s Reply") at 14-15, ECF No. 45. Moreover, in the government's view, the upward adjustment to DZSP's cost proposal was independently reasonable. *See* Def.'s Cross-Mot. at 39-41. It asserts that DZSP "submitted conflicting information in its cost and technical proposals," specifically in the [***] in its cost proposal and in indications that it would [***] in its technical proposal. *See id.* at 39-40 (emphasis omitted). "Due to these inconsistencies, . . . [the Navy] determined that DZSP's [***] was unrealistic." *Id.* at 40.

The court accepts that the Navy was not bound by its 2016 evaluation, but it also considers that a reversal of that evaluation had to be accompanied by a rational explanation in fact. *Cf. State Farm*, 463 U.S. at 41-42 ("A settled course of behavior embodies the agency's informed judgment that, by pursuing that course, it will carry out the policies committed to it by Congress. There is, then, at least a presumption that those policies will be carried out best if the settled rule is adhered to.") (citations and internal quotation marks omitted). The court will sustain agency actions "unless the action does not evince rational *reasoning* and consideration of relevant factors." *PAI Corp.*, 614 F.3d at 1351 (emphasis added) (internal alterations and quotations omitted). The Navy's former determination of the realism of DZSP's [***] is assuredly relevant, and the Navy certainly considered it. *See* Def.'s Reply at 13-15. But, the Navy's explanation in the record for the reversal points mainly to the inconsistency between the [***]. AR 192-26973; Def.'s Cross-Mot. at 39-40.

That aspect of the 2017 cost evaluation rests on DZSP's experience with exempt employees under its bridge contracts. *See* AR 192-26974 to -26975. The evaluation determined that over the course of the bridge contracts, DZSP's exempt labor rate had increased by an average of [***]. AR 192-26974. Even so, the evaluation did not make an upward adjustment consistent with that rate. It departed from that rate because of the "numerous changes in employees, job categories, and the quantity of positions proposed," rendering the bridge contracts disanalogous to the instant contract. *See* AR 192-26975. It was not reasonable for the

11

Navy to selectively use the bridge contracts. The circumstances in Guam have undoubtedly changed markedly, and more exempt employees than were projected in 2013 recently have been and will be needed. The number of additional exempt employees hired by DZSP under the bridge contracts to meet the increased need is not disclosed precisely in the record, although the number has at least doubled. *See* Hr'g Tr. 12:22-25 ("[A]s a result of the [] changed circumstances and additional work being done on Guam, DZSP has added I believe its [***] full-time employees to account for that fact."). As noted previously, under the bridge contracts, significant increases occurred in some service requirements. *See supra*, at 8. Increases of a sizeable magnitude, and the resulting need for additional exempt employees, manifestly have had an effect on the labor market in Guam. The Navy provides no explanation why the circumstances are both too different to apply a [***] rate increase consistent with the bridge contracts and yet similar enough to use them as a basis for making an upward adjustment to DZSP's cost proposal.[9]

The Navy also does not factor the increased need for exempt employees into its analysis of DZSP's current and proposed retention rates. DZSP's experience under its bridge contracts had shown that it could hire the new exempt employees necessary to staff the larger requirements, and that it could retain existing employees. Nonetheless, the age of its employees was becoming an issue. Some attrition would be inevitable given the aging of DZSP's exempt workforce. *See* AR 95-13832 (referring to DZSP's "challenge of an aging workforce where [***]"); *see also* Hr'g Tr. 36:5-13. In this respect, the Navy's evaluation in 2017 did not address, as the evaluation in 2016 had done, the demographics of the incumbent exempt workforce. *Compare* AR 192-26972 to -26977 (2017), *with* AR 95-13832 (2016). Additionally, the evaluation in 2016 had noted that [***] of DZSP's workforce were local hires, AR 95-13832, and that DZSP was actively participating in the apprenticeship program on Guam, AR 95-13834. But, nowhere does the Navy in 2017 undertake an analysis of the demographics of DZSP's *new* hires under the bridge contracts to meet the military's increased needs on Guam. Finally, the technical team that conducted the evaluation in 2016 was locally based in Guam, AR 95-13821; Hr'g Tr. 85:5-8, while the 2017 cost evaluators were based in Hawaii, AR 192-26969, -26980, AR 193-26984, -27007.

Further, the Navy offers no reasoning to explain applying an upward adjustment to DZSP's proposal due to changed circumstances evident with the bridge contracts while failing to

---

[9]The Navy set out a general and limited factual basis for the [***] escalation factor that it applied to DZSPs rates. It looked to

> an eight-year average of Guam Bureau of Statistics Consum[er] Price Index (CPI) for years 2009 through 2016. AR [192-]26976. The [cost evaluations] reasoned that a 'multi-year trend is a reasonable basis for projections' and further explained that '[t]he use of a longer-term data set takes into account high/low years and levels out the overall trend.' AR[192-]26977.

Def.'s Cross-Mot. at 15. This use of a generally applicable eight-year trend in the Guam CPI ignores both the effect of the recent build-up of military assets in Guam and the need for specific skill sets in the exempt operations-service labor force.

consider those changes in assessing Fluor's proposal.  While Fluor's [***], offering a proposal so out of step with the Navy's current demands placed on its contractors in Guam raises concerns about contractual risk that merit consideration as a relevant factor.  *See Harmonia Holdings Grp., LLC v. United States*, __Fed. Cl.__, __, 2018 WL 1080623 at *6 (2018) ("'[U]nreasonably high prices for contract performance' are not the only way . . . [to] create unacceptable risks for the government. . . .  Of equal importance to the Agency's risk assessment is [the bidder's] expertise and apparent understanding of the contract . . . .").

In sum, this record does not support the Navy's determination that DZSP's [***] was unrealistic, and the Navy's upward adjustment of DZSP's costs proposal because of changed circumstances evidenced by the bridge contracts was arbitrary and capricious.[10]

### D.  Equitable Relief

DZSP seeks a declaration setting aside the contract award to Fluor and a permanent injunction requiring that the Navy perform a new evaluation consistent with this court's determination.  In a bid protest, the court may award relief that it considers proper, including declaratory and injunctive relief.  28 U.S.C. § 1491(b)(2).  "The determination of whether injunctive relief is appropriate is left to the court's 'equitable discretion.'"  *Angelica Textile Servs., Inc. v. United States*, 95 Fed. Cl. 208, 223 (2010) (citing *PGBA*, 389 F.3d at 1225-26).  "In deciding whether a permanent injunction should issue, a court considers: (1) whether, as it must, the plaintiff has succeeded on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) whether the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief."  *PGBA*, 389 F.3d at 1228-29 (internal citations omitted).

For the reasons explained above, DZSP has prevailed on the merits.

DZSP claims that it will be irreparably harmed if the court does not grant injunctive relief because it would "be deprived of the opportunity to fairly compete for a contract worth over $400 million."  Pl.'s Mot. at 38.  The "[d]enial of the opportunity to compete for a contract can constitute irreparable harm."  *Miles Constr., LLC v. United States*, 108 Fed. Cl. 792, 806 (2013) (citing *Electronic On-Ramp, Inc. v. United States*, 104 Fed. Cl. 151, 169 (2012); *NetStar-1 Gov't Consulting, Inc. v. United States*, 101 Fed. Cl. 511, 530 (2011), *aff'd*, 473 Fed. Appx. 902 (Fed. Cir. 2012)); *see also United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312, 323 (1998) ("[T]he opportunity to compete for a contract and secure any resulting profits has been recognized to constitute significant harm.").  While it is true that "unsupported allegation[s] that a party will be deprived of a chance to compete fairly [do not] meet the standard for irreparable

---

[10]The court does not reach the question of whether the Navy disparately applied the Guam Gross Receipts Tax as it constitutes "minutiae of the procurement process in . . . [matters] which involve discretionary determinations . . . that [the] court will not second guess."  *See E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996) (internal citations omitted).  Any "small errors made by the [Navy regarding the Guam Gross Receipts Tax] are not sufficient grounds for rejecting [the] entire procurement."  *Grumman Data Systems Corp. v. Widnall*, 15 F.3d 1044, 1048 (Fed. Cir. 1994) (citing *Lockheed Missiles & Space Co. v. Bentsen*, 4 F.3d 955, 960 (Fed.Cir.1993)).

harm," *see* Def.'s Cross-Mot. at 49 (citing *OAO Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001)), DZSP has provided far more than mere allegations. As the Navy acted arbitrarily and capriciously when evaluating DZSP's and Fluor's proposals, DZSP was deprived of an opportunity to fairly compete for the contract. Therefore, the court finds that DZSP will suffer irreparable harm if injunctive relief is not provided.

The government argues that "harm to the [g]overnment outweighs the harm to DZSP" because the contract seeks to secure services for a "significant military staging point in the Pacific." Def.'s Cross-Mot. at 49. The court accepts the factual predicate but not the inference to be drawn from it. DZSP has provided base operations services in Guam since 2005 and continues to do so. There has been no indication from the government that it cannot so continue. The Navy can maintain services to the military installations in Guam either through an extension of the current contract or a new bridge contract, pending a reevaluation or a new solicitation. Because the Navy has the ability to prevent any interruptions in base operation services in Guam, the balance of the harms favors DZSP.

Finally, public interest favors a grant of injunctive relief because the public "has a strong interest in preserving the integrity of the procurement process." *Angelica Textile Servs.*, 95 Fed. Cl. at 223 (citing *DGR Assocs., Inc. v. United States*, 94 Fed. Cl. 189, 211 (2010); *Hospital Klean of Texas, Inc. v. United States*, 65 Fed. Cl. 618, 624 (2005)). That interest would be undermined if the court were to deny injunctive relief and let the Navy's arbitrary and capricious actions in this procurement stand. Injunctive relief is therefore warranted.

## CONCLUSION

For the reasons stated above, DZSP's motion for judgment on the administrative record is GRANTED, and the government's and Fluor's cross-motions for judgment on the administrative record are DENIED. DZSP's motion to supplement the administrative record is GRANTED IN PART insofar as some of the supplementary documents are necessary to complete the administrative record and is DENIED IN PART as to the remaining proposed supplementary documents.[11] The Navy's contractual award to Fluor is set aside, and the Navy is enjoined to perform a new evaluation of DZSP's and Fluor's proposals or to conduct an entirely new solicitation, whichever it chooses. The clerk is directed to enter judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow

---

[11] The government's motion to strike all references to the supplementary documents provided by DZSP is likewise GRANTED IN PART and DENIED IN PART. All citations to portions of the supplementary documentation that do not complete the record will be stricken; all other references will remain.

Judge